UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ALICIA STEGER,

        Plaintiff,                                **REPORT AND**
                                                              **RECOMMENDATION**
                                                              19-CV-03026 (JMA) (JMW)
        -against-

NASSAU COMMUNITY COLLEGE,

        Defendant.
------------------------------------------------------------X

**A P P E A R A N C E S:**

**Mordy Yankovich**
Lieb at Law, P.C.
308 West Main Street
Suite 100
Smithtown, New York 11787
*Attorney for Plaintiff Alicia Steger*

**Stephen E. Carlin**
Nassau County Attorney's Office
One West Street, 2nd Floor
Mineola, New York 11501
*Attorney for Defendant Nassau Community College*

**WICKS,** Magistrate Judge:

      The crux of the present cross-motions for summary judgment is whether Defendant Nassau Community College provided its employee Plaintiff Alicia Steger, who suffers from a knee disability, "reasonable accommodations" under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* Also at issue is whether Defendant's alleged failure to provide such reasonable accommodations culminated in Plaintiff's constructive discharge from her position with Defendant. The parties' cross-motions for summary judgment are currently before the Court

for a Report and Recommendation on referral from the Honorable Joan M. Azrack. For the reasons that follow, the undersigned respectfully recommends that Plaintiff's motion be denied in its entirety, and that Defendant's motion be granted in part and denied in part.

## I. FACTUAL BACKGROUND

The following facts are undisputed unless otherwise stated. Defendant, a community college in Nassau County, employed Plaintiff for over twenty-two years. (DE 31-2 ¶ 1.) Plaintiff began her employment for Defendant as an Assistant Director of Marketing and Communication, was elevated to Associate Director, and finally became Director. (*Id.* ¶ 28.) On September 28, 2017, Plaintiff underwent the first of several knee surgeries and received a right knee replacement. (*Id.* ¶ 11.) Plaintiff submitted to Defendant a Request for Reasonable Accommodation form, requesting to work from home for the week following her knee replacement surgery. (*Id.* ¶ 12.) Defendant granted Plaintiff's request and permitted her to work from home until November 13, 2017. (*Id.* ¶ 13.) Plaintiff subsequently requested an extension of time to work from home, which Defendant granted. (*Id.* ¶ 14.) However, because Plaintiff was only permitted to work from home for approximately three hours a day, Plaintiff used accrued sick time to remain home and fulfill her job duties. (*Id.*)

Plaintiff returned to working in-person in December 2017, at which point she had acquired a handicap parking pass and began using a walker. (*Id.* ¶¶ 15.) Plaintiff's office was located in the Tower building on campus. (*Id.*) The Tower parking lot had three handicapped spots. (*Id.* ¶ 18.) In addition to the handicapped spots, the parking lot had two reserved spots for Defendant's President and Vice President. (*Id.*) When Plaintiff returned to work, Defendant told her that she could park on a ramp located in front of the Tower building. (*Id.* ¶ 16.) Plaintiff parked on the ramp for approximately two weeks before she was told that she was told that the space was needed for vendors, at which point she requested a handicap spot. (*Id.*) Plaintiff also used the Vice

2

President's spot for approximately two weeks and requested to use the spot permanently, but her request was denied because it was specifically reserved for the Vice President despite the fact that it was typically vacant. (*Id.* ¶ 18.) The spot was later given to the Vice President of Governmental Relations. (*Id.*) When Plaintiff was told that she could no longer park in the Vice President's spot, Defendant offered her other parking options, including putting a sign with her handicap parking pass number on one of the three handicapped parking spots in front of the Tower. (*Id.* ¶ 19.)

The parties dispute, however, whether Plaintiff could ever use the parking spot. (*Id.* ¶¶ 19–20.) Because there were undisputed instances when other people could use the spot, Defendant would issue written warnings that the spot was designated for Plaintiff. (*Id.* ¶ 20.) In Defendant's view, it "did not have any legal authority to do anything more than issue a note or warning to someone else with a valid handicapped parking permit[.]" (*Id.*) Plaintiff "vigorously disputes that 'nothing could be done further' regarding the enforcement of the parking spot." (*Id.*) However, Defendant further attempted to secure Plaintiff's designated spot by placing a traffic cone in it, which was meant to deter others from parking there. (*Id.* ¶ 21.) Plaintiff testified, though, that other employees would move the cone and park in the spot. (DE 31-1 at 42–43.) It is unclear from the record exactly how often Plaintiff was able, and was unable, to park in the spot. Defendant, aware that Plaintiff could sometimes not park in the designated spot, also offered to have her park at Public Safety Headquarters, where a public safety officer would drive her to and from the Tower. (DE 31-2 ¶ 23.) While the ride from the public safety lot took approximately two to three minutes (*id.* ¶ 23), Plaintiff would have to wait "a considerable amount of time" for the public safety officer to arrive, "sometimes an additional [twenty to thirty] minutes," (*id.* ¶ 45).

On April 5, 2018, Plaintiff underwent a second knee surgery. (*Id.* ¶ 24.) Plaintiff submitted to Defendant another Request for Reasonable Accommodation on May 10, 2018 to work remotely.

3

(*Id.*) Although Defendant granted to request to work remotely until June 28, 2018, the parties dispute the extent whether Plaintiff worked full or part time from home. (*Id.*) Plaintiff returned to working in-person in September 2018 and does not recall whether she submitted any other reasonable accommodation requests at that time. (*Id.* ¶ 25.) Plaintiff notified Defendant of her resignation on September 26, 2018 and worked her final day on October 11, 2018. (*Id.* ¶ 26.)

## II.   PROCEDURAL HISTORY

Plaintiff initially filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on July 25, 2018. (*Id.* ¶ 7.) The EEOC issued Plaintiff a notice of right to sue on February 20, 2019. (*Id.* ¶ 8.) Plaintiff then commenced this action on May 21, 2019 by filing a complaint. (DE 1.)

Having completed discovery, both parties now move for summary judgment on Plaintiff's ADA reasonable accommodation and constructive discharge claims. (DE 27, 31.) On October 21, 2021, the Honorable Joan M. Azrack referred those motions to the undersigned for a Report and Recommendation. (Electronic Order dated Oct. 21, 2021.)

## III.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* On a motion

for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The moving party bears the initial burden of establishing that there are no material facts in dispute and must provide "affirmative evidence" from which a factfinder could return a verdict in its favor. *Id.* at 257. If the movant provides such affirmative evidence, then "the burden shifts to the nonmovant to point to record evidence creating a genuine issue of material fact." *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (citing *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)).

The same standard, of course, applies to cross-motions for summary judgment. *See Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001); *C & A Carbone, Inc. v. Cnty. of Rockland*, No. 08-CV-6459, 2014 WL 1202699, at *5 (S.D.N.Y. Mar. 24, 2014). Generally, in deciding cross-motions for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales*, 249 F.3d at 121; *see also Chartis Seguros Mex., S.A. de C.V. v. HLI Rail & Rigging, LLC*, 3 F. Supp. 3d 171, 179 (S.D.N.Y. 2014). But where, as here, "the motion and cross-motion seek a determination of the same issue[s], the Court may address them together." *Royal & Sun All. Ins., PLC v. E.C.M. Transp., Inc.*, No. 14-CV-3770, 2015 WL 5098119, at *2 (S.D.N.Y. Aug. 31, 2015) (citing *Chartis Seguros*, 3 F. Supp. 3d at 179).

5

## IV. DISCUSSION

### A. *Plaintiff's ADA Claim*

Under the ADA, "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "An employer may . . . violate the ADA by failing to provide a reasonable accommodation." *McMillan v. City of N.Y.*, 711 F.3d 120, 125 (2d Cir. 2013). "A plaintiff states a prima facie failure to accommodate claim by demonstrating that (1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Id.* at 125–26. Once a plaintiff established a *prima facie* case, the burden shifts to the defendant employer to demonstrate that the plaintiff's proposed accommodation would result in an undue hardship. *Scalera v. Electrograph Sys., Inc.*, 848 F. Supp. 2d 352, 360 (E.D.N.Y. 2012). Here, Defendant does not dispute the first three elements of Plaintiff's failure to accommodate claim, namely that she is disabled under the meaning of the ADA, Defendant had notice of her disability, and that Plaintiff could perform the essential functions of her job with reasonable accommodations. What the parties do dispute, however, is whether Defendant's actions in designating Plaintiff a parking spot and allowing her to work remotely constituted reasonable accommodations.

### i. *Refusal of Reasonable Accommodation*

To show that a defendant refused to provide reasonable accommodations, a plaintiff "bears only a burden of production." *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir.

6

1995) (citing *Gilbert v. Frank*, 949 F.2d 637, 642 (2d Cir. 1991)). The Second Circuit has made clear that this burden "is not a heavy one" and that "[i]t is enough for the plaintiff to suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits." *Id.* The issue of whether an accommodation is reasonable is normally a question of fact best left for determination by jury. *See Canales–Jacobs v. N.Y. State Off. of Ct. Admin.*, 640 F. Supp. 2d 482, 500 (S.D.N.Y. 2009) (citing *Borkowski*, 63 F.3d at 138). Although the ADA "does not require the employer to provide every accommodation a disabled employee may request," it does require that "the accommodation provided is reasonable." *D'Eredita v. ITT Corp.*, 370 F. App'x 139, 141 (2d Cir. 2010) (summary order) (internal quotation marks and citation omitted). The phrase "reasonable accommodation" is defined as "[m]odifications or adjustments to the work environment . . . that enable an individual with a disability who is qualified to perform the essential functions of that position" as well as "[m]odifications or adjustments that enable a covered entity's employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities." 29 C.F.R. §§ 1630.2(o)(1)(ii)-(iii). Therefore, a reasonable accommodation may include "making existing facilities used by employees readily accessible to and usable by individuals with disabilities." 42 U.S.C. § 12111(9)(A); 29 C.F.R. § 1630.2(o)(2)(i).

  Here, there is a genuine issue of fact of whether Defendant failed to provide Plaintiff a reasonable accommodation. Defendant offered as an accommodation to "put[] up a sign with [Plaintiff's] handicap parking pass number on one of the three handicapped parking spots in front of the Tower," other employees would still use her designated spot. (DE 31-2 ¶¶ 19–20.) Although Defendant could not issue tickets or otherwise prevent other employees from parking in the spot designated for Plaintiff (*id.* ¶ 20), Defendant attempted to deter other employees from using the

7

spot by placing a traffic cone in it (*id.* ¶ 21). And, in instances where employees parked in Plaintiff's space, Defendant offered to have Plaintiff park at Public Safety Headquarters and a public safety officer would drive to the Tower and back later. (*Id.* ¶ 23.) The parties sharply dispute whether Defendant's accommodations were reasonable, a determination that cannot be reached as a matter of law and thus must go to a jury.

*D'Alessio v. Charter Comms., LLC*, a case that Plaintiff relies heavily on, is instructive. There, like here, the plaintiff alleged that defendant denied her reasonable accommodation request by failing to prevent other vehicles from parking in a handicapped spot located in a lot that Defendant allowed her to park in. 18-cv-2738 (NG) (LB), 2020 WL 5638721, at *4 (E.D.N.Y. Sept. 21, 2020). The court concluded that the question of whether defendant "den[ied] plaintiff's reasonable accommodation request by allowing plaintiff to continue to park in the . . . lot, but declining to do anything about the vehicles that prevented her from using the handicapped spot" should be submitted to the jury. *Id.* at *12. The court reasoned that a jury *could* have found that defendant was required to ensure that the spot was available to plaintiff when she needed it, and that, in declining to do *anything* to ensure that the spot was available for plaintiff, defendant failed to reasonably accommodate her. *Id.* at *12–13. Accordingly, the court denied defendant's motion for summary judgment. *Id.* at *13.

*D'Alessio* underscores why an issue of material fact exists here warranting the denial of both parties' motions for summary judgment. Defendant here did more than the employer in *D'Alessio* in taking affirmative steps to at least attempt to secure the parking space for Plaintiff by issuing warnings and placing a cone in the spot. (DE 31-2 ¶¶ 19–20.) Moreover, Defendant gave Plaintiff a means of parking and not having to walk even when the space was taken—parking at Public Safety Headquarters and having a public safety officer drive her to and from the Tower.

(*Id.* ¶ 23.) On the other hand, Plaintiff raises issues of material fact that call into question whether these accommodations were indeed reasonable, namely that she had to wait twenty to forty minutes for the public safety officer to retrieve her from the Public Safety Headquarters. (*Id.* ¶ 45.) Additionally, there seems to be some dispute as to whether Defendant reasonably accommodated Plaintiff in her requests to work remotely, as it is unclear whether Plaintiff was able to work full time during this period, or had to work part time and allocate her accumulated sick time to properly work. (*Id.* ¶ 24.) In short, whether Defendant's provided accommodations—more than those provided in *D'Alessio* but countered with additional factual issues by Plaintiff—is a question best suited for the jury.[1]

In sum, the undersigned respectfully recommends that both parties' motions for summary judgment be denied as to Plaintiff's ADA claim.

### ii. *Constructive Discharge*

A "constructive discharge occurs when the employer, rather than acting directly, 'deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation.'" *Pena v. Brattleboro Retreat*, 702 F.2d 322, 325 (2d. Cir. 1983) (citation omitted). The existence of unpleasant conditions is insufficient to support a claim of constructive discharge; rather, a plaintiff must demonstrate "first, that the employer acted

---

[1] In support of her motion, Plaintiff also relies on *Astralis Condominium Association v. Secretary, United States Department of Housing and Urban Development*, a case out of the First Circuit concerning the review of an administrative law judge's determination of a party's Fair Housing Amendments Act claim regarding the complainants' inability to access handicapped parking spots in their housing complex. 620 F.3d 62, 64–65 (1st Cir. 2010). Although, as highlighted by Plaintiff, the *Astralis* court's determination was guided by ADA reasonable accommodation jurisprudence, *id.* at 66, the court ultimately concluded that "a rational person could logically infer (and, thus, plausibly find) that the requested accommodation," unfettered use of handicapped parking spaces, "was both reasonable and necessary to allow the complainants equal use and enjoyment of their residence," *id.* at 68 (citation omitted). Whether a rational person could logically infer something, though, is not the standard on summary judgment; rather, there must be no dispute of material fact for a party to prevail. Instead, *Astralis*, too, supports the Court's conclusion that these factual issues are best left for a reasonable jury to decide.

deliberately, and not merely negligently or ineffectively, in bringing about the intolerable work conditions, and next, that, when assessed objectively, a reasonable person in the employee's position would have felt compelled to resign." *Castro v. City of N.Y.*, 24 F. Supp. 3d 250, 266 (E.D.N.Y. 2014) (citation omitted); *see Gingold v. Bon Secours Charity Health Sys.*, 768 F. Supp. 2d 537, 546 (S.D.N.Y 2011) ("The standard is a 'demanding one,' because 'a constructive discharge cannot be proven merely by evidence that an employee . . . preferred not to continue working for that employer or that the employee's working conditions were difficult or unpleasant.'") (quoting *Miller v. Praxair, Inc.*, No. 09 Civ. 2962, 408 F. App'x 408, 410 (2d Cir. 2010)).

Here, the record is devoid of any evidence suggesting that Defendant deliberately made Plaintiff's working conditions so intolerable that Plaintiff was forced to resign from her position. To the contrary, the undisputed facts establish that Defendant worked to accommodate Plaintiff's disability. Defendant did so by allowing Plaintiff to work remotely for periods of time following her surgeries; offering her a parking spot with a sign indicating that it was for Plaintiff and placing a cone in the spot in an attempt to deter other from parking there; and offering Plaintiff the ability to park at Public Safety Headquarters and have a public safety drive her to and from the Tower. (DE 32-1 ¶¶ 19–20, 23.) Although, as discussed above, it cannot be said as a matter of law that these accommodations were or were not reasonable under the ADA, it can be said that nothing in the record suggests that Defendant *deliberately* sought to make Plaintiff's working conditions so intolerable to force her resignation. Indeed, Plaintiff's lackluster argument as to her constructive discharge claim is telling. Devoting only a paragraph to the claim, Plaintiff asserts in conclusory fashion that Defendant constructively discharged Plaintiff because it failed to provide her a reasonable accommodation. (DE 31-3 at 12.) This assertion, of course, ignores the requirement

10

that an employer "deliberately make[] an employee's working conditions so intolerable that the employee is forced into an involuntary resignation'" to make out a constructive discharge claim. *Pena*, 702 F.2d at 325 (citation omitted). Because there is no genuine dispute of material fact that Defendant did not deliberately make Plaintiff's working conditions so intolerable to force her resignation, Plaintiff's constructive discharge claim must fail.

Accordingly, the undersigned respectfully recommends that Plaintiff's motion for summary judgment as to her constructive discharge claim be denied, and that Defendant's motion for summary judgment as the constructive discharge claim be granted.

## V. CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that (1) Plaintiff's motion for summary judgment as to her ADA reasonable accommodation claim be denied; (2) Defendant's motion for summary judgment as to Plaintiff's ADA reasonable accommodation claim be denied; (3) Plaintiff's motion for summary judgment as to her constructive discharge claim be denied; and (4) Defendant's motion for summary judgment as to Plaintiff's constructive discharge claim be granted.

## VI. OBJECTIONS

A copy of this Report and Recommendation is being electronically served on counsel. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day

period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (same).

Dated:  Central Islip, New York
        March 8, 2022

                                      Respectfully submitted,

                                      /s/ *James M. Wicks*
                                        JAMES M. WICKS
                                    United States Magistrate Judge